# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CARLOS D. NORWOOD,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 14-00244-N** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Carlos D. Norwood ("Norwood") has brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his protective applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* By the consent of the parties (*see* Doc. 13), the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (*See* Doc. 14).

Upon consideration of the parties' briefs (Docs. 15, 18), the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s)])"), and the arguments of counsel made at the hearing held January 21, 2015, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

# I.     **Procedural Background**

On August 17, 2011, Norwood protectively filed with the Social Security Administration ("SSA") applications for DIB and SSI.[1]  Initially, he alleged disability beginning October 23, 2008; however, he later amended his onset date to July 1, 2011.[2]  After his applications were initially denied on November 23, 2011, Norwood requested a hearing, which was held in Mobile, Alabama, before an Administrative Law Judge ("ALJ") on January 23, 2013.  (R. 20).

On February 13, 2013, the ALJ issued an unfavorable decision on Norwood's applications.  (*See* R. 17-34).  Norwood requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review.  (R. 15-16).  On April 3, 2014, the Appeals Council issued its decision denying Norwood's request for review.  (R. 1-5).

On June 3, 2014, Norwood filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision.  (Doc. 1).    *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law

---

[1] "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. 423(a). The Social Security Act's Supplemental Security Income ('SSI') is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C)."    *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

[2] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.  20 C.F.R. § 416.202–03 (2005).  For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.").[3]

## II.   Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is   ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' "  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew,

---

[3] The record reflects that Norwood resides in this judicial district.  Thus, venue is proper in this Court.  *See* 42 U.S.C. § 405(g) ("Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business…").

reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted).  "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   Moreover, "[t]here is no presumption…that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid.  Instead, [the court] conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) (internal citation omitted).  In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per

curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished). [4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014). *See also Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]   This five-step evaluation process "is used to determine disability for both SSI and DIB claims."  *Moore*, 405 F.3d at 1211 (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1030–31 (11th Cir.1986); 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB)).

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."  *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history."  *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)).   "These factors must be considered both singly and in combination.  Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a plaintiff proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the

---

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

When, as here, "no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner…" *Ingram*, 496 F.3d at 1262.

### III.   Claims on Appeal

**Claim 1** –   The ALJ erred in rejecting the opinion of Dr. Pita, a treating physician.

**Claim 2** -   The ALJ erred in her credibility finding.

**Claim 3** -   The ALJ improperly assessed Norwood's residual functional capacity.

(Doc. 15 at 2).

### IV.   Analysis

At Step One, the ALJ determined that Norwood had not engaged in substantial gainful activity since his alleged disability onset date. (R. 22). At Step Two, the ALJ determined that Norwood had the following severe impairments: obstructive sleep apnea, atypical chest pain, lumbago, morbid obesity, hypertension,

tumid lupus, arthropathy, osteoarthritis, degenerative changes of the left knee, and chronic fatigue.  (R. 22-23).  At Step Three, the ALJ found that Norwood did not have an impairment or combination of impairments that meets or equals the severity of the specified impairments in the Listing of Impairments.   (R. 23).  Norwood does not challenge any of the ALJ's decisions at Steps One through Three. His claims of error concern the ALJ's analysis in Step Four.

> At Step Four,
>
> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

> The ALJ assigned Norwood an RFC of "light work," as defined in 20 C.F.R. §§

404.1567(b) and 416.967(b),[6] with exceptions.  More specifically, the ALJ found that Norwood was limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; that in an 8-hour workday he could stand/walk up to 4 hours and sit up to 6 hours with normal breaks; that he could not perform pushing or pulling of leg controls or operate foot controls; that he should not climb, crouch, kneel, or crawl; that overhead reaching would be limited to "occasionally with right upper extremity;" that he could frequently stoop; that he should avoid concentrated exposure to extreme temperatures, vibrations, heights, or hazards such as dangerous machinery; and that, due to pain, fatigue, and the potential for reduced stamina, he could have some deficits in concentration, persistence, and pace, which could cause him to be off task or at a non-productive pace for up to about 5% of the workday.  (R. 23).

## A.    Claim 1 (Rejecting Treating Physician Opinion)

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' "  *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "In assessing medical opinions,

---

[6] "Light work is defined as work that 'involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.'…The regulations further state that '[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.' "  *Phillips*, 357 F.3d at 1239 n.5 (quoting 20 C.F.R. § 404.1567).

the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.   These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).   "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). However, the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth*, 703 F.2d at 1240.   *Accord, e.g.*, *Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (per curiam) (unpublished).

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. May 2, 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502).   "Absent 'good cause,' an ALJ is to give the medical

opinions of treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'  With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so."  *Id.* (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted).

Norwood argues that the ALJ erred in rejecting the medical opinions of treating physician Dr. Mark Pita ("Dr. Pita") – specifically, those expressed in a Clinical Assessment of Symptoms ("CAS") on July 12, 2012.  (R. 275-276 [Ex. 9F]). The ALJ summarized Dr. Pita's CAS as follows:

> [Dr. Pita] noted that the claimant's symptoms were not present in any significant degree in the ability of the claimant to engage in cognitive functioning.  Physical activity such as walking, standing, sitting, bending, stooping, and moving of extremities would increase the severity and degree of symptoms to such an extent as to cause the claimant to be unable to engage in work or work-related tasks on a regular and sustained basis over the course of an 8-hour day.  He also noted that the claimant's medications caused side effects, which imposed some limitations upon the claimant but not to such a degree as to create serious problems in most instances.  Dr. Pita noted that the claimant would need unscheduled breaks every 2 to 4-hours during an 8-hour working day for 10 to 15 minutes before returning to work. On the average, the claimant would be absent from work about three days a month due to his impairments and treatment.  His impairments lasted or expected to last at least twelve months.

(R. 26-27).

The ALJ "assign[ed] less weight to Dr. Pita's assessment, because his

physical findings revealed no significant abnormalities that would keep the claimant from performing light level work." (R. 27).  The Court interprets this as a determination that Dr. Pita's opinion was not supported by his own medical records, which constitutes "good cause" for giving less weight to a treating physician's opinion.  *See Winschel*, 631 F.3d at 1179; *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected…where it is unsubstantiated by any clinical or laboratory findings.").

The ALJ summarized Dr. Pita's objective medical findings as follows:

…[O]n July 20, 2011, the claimant presented to internist, Dr. Mark A. Pita complaining of right shoulder pain.  He also complained of chest pain.  He said the pain was pressure-like pain which occurred at anytime, lasted a few minutes, occurred in the middle of the chest, non-radiating, and not associated with nausea, vomiting, or sweating. Physical findings were weight gain of 9 pounds and blood pressure 154/94.  Musculoskeletal exam revealed pain with passive movement of right shoulder and he was not able to lift right arm past 90 degrees but no other abnormalities.  His general appearance was normal and no skin lesions.  Dr. Pita's assessments were chest pain or discomfort, arthropathy, combined systolic and diastolic elevation observed, and morbid obesity.  The claimant consulted with a specialist for evaluation of possible gastric bypass.  He was prescribed Mobic, Ultram, Nitroquick (as needed for chest pain), and Lisinopril-HCTZ (Exhibit 2F).

…

On December 29, 2011, the claimant saw Dr. Pita complaining of joint pain that had gotten worse.  However, his physical examination was normal with weight at 433 pounds and no skin lesions.  He was counseled on diet, exercise, and lifestyle modification, but he continued to be non-compliant (Exhibit 5F).

…On April 3, 2012, the claimant present [sic] to Dr. Pita with complaints that the chest pain improved with nitroglycerin, but he had been having more pain worse with exertion.  He also said his joint pain and fatigue had been getting worse.  Physically, he was morbidly

obese, had decreased range of motion of lumbar spine and pain with palpation of bilateral knees. X-ray of bilateral knees revealed minimal degenerative change of the lateral compartment of the left knee and no acute osseous injury or dominant abnormality of either knee. Examination of his skin revealed no skin lesions. The claimant was referred to a cardiologist. Dr. Pita's assessments were arthropathy, chest pain or discomfort, adult sleep apnea, backache, morbid obesity, and combined systolic and diastolic elevation was observed (Exhibit 6F).

...

On July 16, 2012, Dr. Pita saw the claimant for medication refills and consultation. The claimant reported that he was not feeling tired or poorly, had no fever, and no headaches. He had no localized joint pain and no depression. Physical findings revealed his weight was 442.6 pounds, Body Mass Index (BMI) 65.4 kg/m2, and height 69 inches. His musculoskeletal system was normal and he had no skin lesions (Exhibit 10F).

...

...[O]n October 4, 2012, Dr. Pita saw the claimant for a follow-up and a refill of his medications. Physical examination revealed that the claimant's weight was still at 445 pounds, BMI 65.7 kg/m2, and height 69 inches but physical findings were normal (Exhibit 15F).

(R. 25-27).

None of these objective findings contradict the ALJ's determination that Norwood could perform light work as defined in the Social Security regulations, with some restrictions.[7] Norwood argues that the ALJ failed to cite and address

---

[7] *Cf. Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. June 24, 2014) (per curiam) (unpublished) ("[T]he ALJ found that Dr. Davina–Brown's opinions were unsupported by her own medical records. It is true that this doctor described Harrison as 'totally and permanently disabled' and consistently diagnosed Harrison with fibromyalgia, chronic fatigue syndrome, and IgG deficiency, among other ailments. But her records contain no indication that Harrison's ailments were so severe that they prevented her from maintaining a job. To the contrary, Dr. Davina–Brown's physical examinations of Harrison were consistently unremarkable, and she never found that Harrison suffered from any of the paradigmatic symptoms frequently associated with the most severe cases of

certain record evidence – in particular, the numerous medications he was prescribed, and the treatment notes of examining physician Dr. Sherman – in assigning weight to Dr. Pita's opinions.   However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in h[er] decision," *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam), and the ALJ's opinion adequately reflects that she considered the record medical evidence as a whole in evaluating Dr. Pita's opinion.   This Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *see id.* at 1210, and Norwood has pointed to no evidence in the record that gives the Court reason to question the ALJ's judgment in assigning less weight to Dr. Pita's opinion.[8]

Additionally, the Court notes that Dr. Pita's CAS consists primarily of conclusory "check the line" answers in evaluating Norwood's impairments.   (*See* R. 275-276).   Dr. Pita left blank the section reserved for "Comments" explaining his opinions.   (R. 276), and no other reference is made to treatment notes or other objective medical evidence to support Dr. Pita's answers.   This Court and the Eleventh Circuit have upheld an ALJ's decision to reject a treating physician's form

---

fibromyalgia, such as joint swelling, synovitis, or tender trigger points. For example, Dr. Davina–Brown prescribed medications for Harrison's chronic pain but never recommended more aggressive treatment, such as visits to the emergency room for pain or trigger point injections. The conservative and routine nature of Dr. Davina–Brown's treatment plan suggests that Harrison's impairments—while significant—were not so severe that Harrison could not perform any job duties.").

[8] Norwood argues that Dr. Pita's opinion is bolstered by the findings of Dr. Alan Sherman, an internist who conducted a consultative examination of Norwood on November 15, 2011. The Court disagrees.   Dr. Sherman opined that "it would be difficult for [Norwood] to maintain labor intense activities such as heavy lifting, pushing, pulling, crawling[,]" but that occupational opportunities "would need to include sitting, standing, fine motor movement, moderate distance ambulation…" (R. 253).   Dr. Sherman's findings, which the ALJ discussed in detail (*see* R. 25-26), do not support the level of impairment reported in Dr. Pita's CAS, nor were they inconsistent with the ALJ's RFC.

opinion where it was not supported by reference to objective medical evidence.  *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. Mar. 30, 2011) (per curiam) (unpublished) (The adjudicator "was free to give little weight to the conclusory assertions contained in the questionnaires because they merely consisted of items checked on a survey, with no supporting explanations."); *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *6 (S.D. Ala. Sept. 28, 2012) ("Plaintiff challenges the existence of 'good cause' and the ALJ's determination that the opinions contained in[ treating physician] Dr. Aktar's Physical Capabilities Evaluation ('PCE') and Clinical Assessment of Pain forms were 'conclusory, providing very little explanation of the evidence relied on in forming that opinion' and that 'the opinion in question departs substantially from the rest of the evidence of record.'… It is the nature of the forms used by Social Security practitioners that the answers are in a check-the-box format with no explanation for the opinions reflected. Dr. Aktar's records contained few objective medical observations. Consequently, the ALJ's determination that Dr. Aktar's opinions on the Physical Capacities Exam ('PCE') and Pain forms were conclusory is supported by substantial evidence, and the opinions were not entitled to controlling weight." (internal citations omitted) (citing *Brown v. Comm'r of Social Sec.,* 442 F. App'x 507, 512 (11th Cir. Oct. 6, 2011) (per curiam) (unpublished) ("[T]he ALJ had good cause not to give controlling weight to Kennedy's opinions. Kennedy's opinions were conclusory, as the forms that he completed in 2007 and 2009 regarding Brown's limitations did not reference his treatment records or adequately explain his

opinions." (citing *Phillips*, 357 F.3d at 1241))).[9]

The ALJ adequately articulated good cause to assign less weight to Dr. Pita's opinion, and that decision is supported by substantial evidence.[10]  Accordingly, the Commissioner's decision is due to be affirmed as to the error alleged in Claim 1.

## B.    Claim 2 (Credibility Findings)

When a claimant attempts to establish disability through his own testimony concerning pain or other subjective symptoms, [courts] apply a three-part test, which requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the

---

[9] *See also Wilkerson ex. rel. R.S. v. Astrue*, No. 2:11–CV–2556–LSC, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) ("Although Dr. Morgan was one of R.S.'s treating pediatricians, the ALJ had good cause to discount her opinion. First, the form report completed by Dr. Morgan and submitted by Plaintiff's counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings.  As noted by the ALJ, '[f]orm reports, in which a medical source merely enters a series of check-offs without supplying any supporting objective findings, are less than optimally useful in the disability determination process.' Dr. Morgan failed to provide medical findings to support and qualify her opinion that R.S. suffered marked and extreme limitations. In fact, Dr. Morgan did not provide any basis for her September 2008 assessment or during the relevant period after R.S.'s June 2008 application date.  Dr. Morgan, instead, offered notations of either extreme or marked limitations in the six domains of functioning on a form submitted by Plaintiff's counsel. The ALJ properly accorded little weight to Dr. Morgan's form assessment because it was conclusory and lacked objective medical evidence." (internal citations omitted) (citing *Phillips*, 357 F.3d at 1240-41))).

[10]     Norwood perfunctorily faults the ALJ for assigning "great weight" to the assessments of a non-examining state agency medical consultant.  (Doc. 15 at 8-9).  It is true that the "opinion of a reviewing, non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *De Olazabal*, 579 F. App'x at 830 (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)).  However, there is no indication that the ALJ's decision to assign less weight to Dr. Pita's opinion was based on the non-examining physician's assessment.  Rather, the ALJ assigned great weight to the assessment only after articulating other good cause to assign less weight to Dr. Pita's opinion.

It is also true that "the report of a non-examining doctor is accorded little weight if it contradicts an examining doctor's report; such a report, standing alone, cannot constitute substantial evidence." *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).  However, here the ALJ also considered objective evidence from examining medical officials and determined that the non-examining consultant's assessments were "consistent with the record as a whole" (R. 28), which included the reports of examining physicians.  Norwood has offered no argument against this finding.

severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).

If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors. *Id.* § 404.1529(c)(1)—(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or symptoms. *Id.* § 404.1529(c)(3). The ALJ then will examine the claimant's statements regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record. *Id.* § 404.1529(c)(4).

"After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony. *Id.*

*Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939-40 (11th Cir. Mar. 27, 2014) (per curiam) (unpublished).

"Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations[,]" *Dyer*, 395 F.3d at 1210 (citation and quotations omitted), and " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's

decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted)).   "[C]redibility determinations are the province of the ALJ, *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005), and [a court] will not disturb a clearly articulated credibility finding supported by substantial evidence, *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995)." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ determined that Norwood's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 27).  First, the ALJ found that Norwood's testimony concerning his daily activities did not support the level of severity he claimed due to his impairments:

> The claimant testified as to limitations including not doing any household chores or yard work, not cooking, not driving, and not attending church.  He also said he got exhausted fast, if he over extended himself.  He stated that he had muscle spasms, chest tightness, gave out of breath, and was fatigued.  He related that his feet and knees swell.  The claimant testified that he was only able to stand no more than 5 minutes and unable to walk no more than 30 to 40 feet.  He said he was slow getting up and down from a sitting position.  He indicated that he was unable to stoop, pick up anything that was flat on the floor, or tie his shoes.

> On the other hand, in regards to his reported regular activities and

abilities, the claimant indicated at the hearing that he was able to pick up after himself, make a sandwich, and cook on occasions. He said he was able to bend a little and he puts his pants on in the bed. He further testified that he was home alone during the day. The activities and abilities all suggest a capacity for attention and concentration without significant restriction or constriction due to his severe impairments that would preclude all substantial gainful activity…

(R. 24).

Later in her opinion, after discussing both Norwood's subjective testimony and the medical evidence of record, the ALJ set forth additional determinations affecting credibility:

The claimant's skin has been noted consistently as normal with no lesions or abnormalities from discord lupus.

Doctor's records reflect that the claimant had experienced chest pain for 20 years -- many of which he was able to work. Turning again to obesity's impact on his abilities, the representative's brief cited issues with manipulation due to adipose tissue in his hands secondary to obesity. However, the claimant himself has not alleged limitations in manipulation in his medical records or during testimony. His last job actually ended due to a disagreement between him and a supervisor about whether a strenuous walk across the compound was necessary. However, he drew unemployment until January 2011.[11]

X-ray of bilateral knees revealed minimal degenerative change of the lateral compartment of the left knee and no acute osseous injury or dominant abnormality of either knee. However, there is no significant pathology, signs or lab/clinical findings to support such severe symptoms.

---

[11] The Commissioner claims that the ALJ's observation about drawing unemployment is significant because, "[i]n order to have collected such benefits, Plaintiff was required to be able, seeking, and willing to immediately accept full-time work, implying that, at least before that date, he was not disabled." (Doc. 18 at 15 (citing http://dir.alabama.gov/docs/guides/uc_brr.pdf (URL inoperative when visited Apr. 23, 2015)). Regardless, the significance of drawing unemployment until January 2011 is diminished by the fact that Norwood amended his disability onset date to July 1, 2011. However, earlier in her opinion, the ALJ had also noted that Norwood "testified that he drew unemployment from March 7, 2011 to July 1, 2011." (R. 22).

> Additionally, the medical evidence showed he went to a nutritionist for weight loss, but he failed to heed the recommendations to lose weight. Instead, the record reflects weight gain.
>
> The claimant testified that he was home alone during the day, which shows he can independently perform his personal care.
>
> Furthermore, the claimant has never been hospitalized or had any surgery for his alleged impairments.

(R. 27-28).

The ALJ's finding that Norwood "had experienced chest pain for 20 years -- many of which he was able to work" does not appear to adequately account for the fact that Norwood amended his disability onset date to July 1, 2011, and testified that "in the last couple of years, [his chest pain] has gotten different" and "hurt worser [sic]" such that he couldn't "over-exert [him]self that much anymore."  In addition, the ALJ also based her credibility determination on Norwood's non-compliance with doctors' recommendations that he lose weight.  The Commissioner may deny benefits "when a claimant, without good reason, fails to follow a prescribed course of treatment that could restore her ability to work." *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988) (citing 20 C.F.R. § 416.930).  However, the Eleventh Circuit has held that "a physician's recommendation to lose weight does not necessarily constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake such treatment." *Id.*  (citing *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986)).  The ALJ's unadorned observation that Norwood has continued to gain weight is not, in and of itself, sufficient to justify

finding noncompliance.  *See id.* ("In the instant case, the Secretary has not made the express findings mandated by 20 C.F.R. § 416.930 prior to denying McCall's application for SSI disability benefits. Admittedly, plaintiff's physicians advised her to lose weight, and the record clearly indicates her condition would improve if she did so, but no evidence has been presented suggesting that plaintiff has refused to follow a plan of prescribed treatment…Further findings of fact and conclusions of law are required before the Secretary may determine that a claimant has refused treatment.").

The ALJ noted certain inconsistencies in Norwood's testimony that appear to have influenced her credibility determination.  For instance, she noted that Norwood testified his limitations included "not doing any household chores" and "not cooking," but then admitting that he "was able to pick up after himself, make a sandwich, and cook on occasions." (R. 24).  The ALJ noted that, while Norwood initially reported that "he was terminated from his [last ]job due to an inability to stand outdoors for long periods[,]" at the hearing Norwood "clarified…that he was actually terminated for failing to follow his supervisor's orders." (R. 24).  Such observations indicate that, "in making h[er] credibility finding, the ALJ also relied upon h[er] observation of [Norwood]'s demeanor at the hearing, which is proper under [this Circuit's] case law." *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. July 8, 2011) (per curiam) (unpublished) (citing *Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985)).  *See also Majkut*, 394 F. App'x at 663 ("Substantial evidence supported the ALJ's conclusion that Majkut's subjective

complaints of disabling pain and other symptoms were not entirely credible.  She was inconsistent in stating that she could not do any chores or drive, but telling other physicians that she drove her husband to work and did some chores."); *Pierce v. Astrue*, Civil Action No. 2:11-00080-N, 2012 WL 3309717, at *8 (S.D. Ala. Aug. 13, 2012) ("The ALJ also noted several inconsistencies in the record. For instance, while Pierce denied performing activities such as cooking or doing household chores (asserting that these activities were performed by his sister and elderly aunt), he at other times acknowledged that he cooked, did housework, and took care of his aunt … This inconsistency provided another reasonable basis for discounting Pierce's subjective statements. *See* 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider whether there are any inconsistencies in the evidence); *Moore,* 405 F.3d at 1212 (finding an ALJ reasonably discounted a claimant's subjective statements due to inconsistencies between her statements and the record).").  Nevertheless, while "the ALJ may consider the claimant's 'appearance and demeanor during the hearing' as a basis of credibility, [s]he cannot impose h[er] observations in lieu of a consideration of the objective medical evidence."  *Jarrell*, 433 F. App'x at 814 (quoting *Norris*, 760 F.2d at 1157-58).

The ALJ also appears to have placed significant weight on Norwood's ability to live alone and do simple household chores in discrediting the impact of his impairments on his ability to work.  However, while "[t]he ALJ may consider the claimant's daily activities when evaluating his subjective symptoms,…a claimant's admission that he participates in daily activities for short durations does not

necessarily disqualify him from a disability. 20 C.F.R. § 404.1529(c)(3)(i); *see Lewis,* 125 F.3d at 1441 (11th Cir. 1997) (noting that the claimant's successful completion of a six-minute treadmill exercise was not necessarily indicative of his ability to work, and that the fact that he did housework and went fishing was not inconsistent with the limitations recommended by his treating physicians)." *Crow v. Comm'r, Soc. Sec. Admin.*, 571 F. App'x 802, 807 (11th Cir. July 7, 2014) (per curiam) (unpublished). *See also Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. Aug. 30, 2010) (per curiam) (unpublished) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir.1997), that does not mean it is improper for the ALJ to consider a claimant's daily activities at all. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (specifically listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms).").[12]

---

[12] *Cf. Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) ("The Appeals Council's second justification—that her daily activities and her ability to care for her personal needs have not been significantly affected—is not supported by substantial evidence on the record as a whole. This explanation is apparently based on Parker's testimony that she could do simple household chores. The Appeals Council, however, ignored other evidence that her daily activities have been significantly affected. For example, she testified that she had to lie down every two hours, and Dr. Wheeler discussed the problems she had experienced at work (difficulty in standing, fatigue and blurred vision)." (record citations omitted)). *Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981) ("The ALJ seems to have relied heavily on the fact that claimant had testified that he had full use of his hands, arms and legs, does shopping and last fall went hunting twice. Yet, statutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity…It is well established that sporadic or transitory activity does not disprove disability." (citation and quotation

Though the ALJ's stated reasons for discrediting Norwood's testimony, at least considered individually, may seem weak, at the end of the day, this Court may not substitute its judgment for the Commissioner's and must affirm the Commissioner's final decision so long as it is supported by substantial evidence, even if the evidence preponderates against it.  The Eleventh Circuit has affirmed an ALJ's credibility determinations, even in the absence of explicitly stated reasons for discrediting, when the record adequately reflects that the ALJ considered the claimant's allegations in light of the record as a whole.  *See Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 513-14 (11th Cir. Oct. 6, 2011) (per curiam) (unpublished) ("Here, the ALJ sufficiently assessed Brown's testimony as to her limitations. The ALJ was not required to make any explicit credibility finding because the decision includes a thorough discussion of Brown's allegations in light of the record as a whole. *See Dyer,* 395 F.3d at 1210. Specifically, the ALJ found that Brown had moderate limitations in daily living activities, social functioning, and concentration based on her testimony that she had trouble completing chores and getting along with others, the fact that she had not had any 'serious incident[s]' with others, and the fact that she had not been hospitalized during the relevant period. Based on these factors, the ALJ determined that Brown was able to work, despite her depression and anxiety, so long as she had no interaction with the general public

---

omitted)); *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989) ("[A]n applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See *Yawitz v. Weinberger,* 498 F.2d 956, 960 (8th Cir. 1974). What counts is the ability to perform as required on a daily basis in the 'sometimes competitive and stressful' environment of the working world. *Douglas v. Bowen,* 836 F.2d 392, 396 (8th Cir. 1987) (quoting *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc)).").

and only occasional interaction with coworkers and supervisors. The implication of the ALJ's credibility finding—that Brown's complaints were 'not fully credible'—is thus clear to us. *See Dyer,* 395 F.3d at 1210. That is, it is clear that the ALJ found Brown's complaints credible, but that he found her complaints as to the severity of her limitations not credible. Therefore, the ALJ considered Brown's subjective complaints in light of the record as a whole and adequately explained his decision not to fully credit Brown's alleged limitations on her ability to work. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)."); *Weekley v. Comm'r of Soc. Sec.*, 486 F. App'x 806, 809 (11th Cir. Aug. 13, 2012) (per curiam) (unpublished) ("Here, the ALJ did not err by failing to explicitly cite to our three-part standard because the record reflects that the ALJ considered and cited to the regulations on which the standard is based and applied the standard correctly. Furthermore, substantial evidence supports the ALJ's determination that Weekley's subjective complaints of pain were not credible. When making a credibility determination, the ALJ must show that he considered the claimant's 'medical condition as a whole,' and in this case, the ALJ's analysis of the objective medical evidence and other evidence in the record complies with this requirement. *See Dyer,* 395 F.3d at 1210.").

Here, the ALJ's detailed discussion of the objective medical evidence of record sufficiently indicates that she considered Norwood's medical condition as a whole in making her credibility determination.  Considered in conjunction with her express reasons for discrediting Norwood, at least some of which are valid, *see supra*, the Court finds that the Commissioner's decision in this regard is supported by

substantial evidence.   Accordingly, the Commissioner's decision is due to be affirmed as to the error alleged in Claim 2.

### C.      Claim 3 (Improper RFC Assessment)

Norwood's arguments at Claim 3 that the ALJ's RFC assessment is not supported by substantial evidence appear to be based primarily on the assumption that the Court would agree with his claims of error in Claim 1 and/or 2.  Because the Court has not, *see supra*, Claim 3 also fails.  Though Norwood asserts, in conclusory fashion, that the ALJ "did not explain how she concluded Mr. Norwood would be capable of doing limited light work on a sustained basis[,]" (Doc. 15 at 14), the Court again points out that " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell*, 771 F.3d at 782 (quoting *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted)).   "The ALJ's decision in this case was not a broad rejection and was sufficient to enable…this Court to conclude the ALJ considered [Norwood]'s medical condition as a whole" in formulating her RFC, *id.*, and Norwood has offered no persuasive argument to the contrary.   Accordingly, the Commissioner's decision is due to be affirmed as to the error alleged in Claim 3.

### V.      <u>Conclusion</u>

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued April 3, 2014, denying Norwood's application

for DIB and SSI benefits is **AFFIRMED** under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 11th day of May 2015.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**